IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

DAT BUI et al.,

                    Plaintiffs,

        v.                                          CIVIL ACTION
                                                    NO. 19-20053
MID-CENTURY INSURANCE COMPANY,

                    Defendant.

## OPINION

Slomsky, J.                                         August 9, 2021

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

      A.    The Fire Loss and Defendant's Investigation ........................................ 2

      B.    This Case ................................................................................................. 8

            1.   Plaintiffs' Cross-Motion for Summary Judgment ................................. 9

            2.   Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment ........ 10

            3.   Defendant's Cross-Motion for Summary Judgment ............................... 12

            4.   Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment
                 and Defendant's Reply ......................................................................... 14

III.  STANDARD OF REVIEW .................................................................................. 16

IV.   ANALYSIS ............................................................................................................ 17

      A.    Defendant's Cross-Motion for Summary Judgment .............................. 18

            1.   Breach of Contract ................................................................................ 18

**a.**   Misrepresentation.......................................................................................... **18**

**b.**   Arson................................................................................................................. **22**

**c.**   Failure to Cooperate ....................................................................................... **23**

**2.**   Consumer Fraud Act............................................................................................ **24**

**3.**   Bad Faith .............................................................................................................. **25**

**B.**   **Plaintiffs' Cross-Motion for Summary Judgment** .................................................. **27**

**1.**   Defendant's Discovery Obligations....................................................................... **28**

**2.**   Defendant's Evidence in Support of its Defenses ................................................. **29**

**3.**   Evidence of Plaintiffs' Prior Fire Loss Claims..................................................... **29**

**V.   CONCLUSION** ............................................................................................................... **30**

## I.       INTRODUCTION

This case involves the burning down of a home owned by Plaintiffs for the seventh time. Plaintiffs Dat Bui and Trang Dang were in Vietnam when the fire occurred and sought insurance coverage for the losses they incurred during the fire.   After a fourteen-month investigation, Defendant Mid-Century Insurance Company denied coverage because of misrepresentations that were made before and during the investigation.   Defendant also declined to pay because it claims Plaintiffs intentionally started the fire and failed to cooperate with their investigation.   The instant case stems from Defendant's denial of Plaintiffs' insurance claim.

On October 9, 2019, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Camden County, Law Division, alleging three claims: (1) breach of contract, (2) violation of the New Jersey Consumer Fraud Act, codified in N.J.S.A. §§ 56:8-1 et seq., and (3) bad faith.  Before the Court are the parties' Cross-Motions for Summary Judgment on all of these claims.

In Plaintiffs' Cross-Motion, they contend that they are entitled to summary judgment because Defendant did not provide certain discovery in this case, and because it failed to produce evidence supporting its denial of the insurance claim.  (See Doc. No. 41 at 9-11.)  They also argue that evidence of their prior fire losses is inadmissible evidence and not a reason to deny coverage for the last fire loss.  (See id. at 9.)   In opposing Plaintiffs' Cross-Motion, Defendant presents evidence supporting its defenses and maintains that it provided the requisite discovery.  (See Doc. No. 46 at 3-15.)  Defendant also submits that evidence of the six prior fires is admissible and inferences adverse to Plaintiffs arising from the fires can be drawn from such evidence.  (See id. at 20-24.)

In Defendant's Cross-Motion, it argues that denial of coverage was warranted for the same reasons noted above and therefore it is entitled to summary judgment on the breach of contract claim.   (See Doc. No. 42-1 at 18-22.)   In addition, Defendant seeks summary judgment on

Plaintiffs' Consumer Fraud Act claim because it denies it engaged in fraudulent activity while handling the claim, (see id. at 23-26), and on the bad faith claim because it took a reasonable amount of time to render a decision on the claim and had a reasonable basis to deny it. (See id. at 26-28.) In opposing Defendant's Cross-Motion, Plaintiffs contend that there are genuine disputes of material fact on the three causes of action. (See Doc. No. 49 at 1.)

For the reasons discussed infra, Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 41) will be denied, and Defendant's Cross-Motion for Summary Judgment (Doc. No. 42) will be granted in part and denied in part.

## II.    BACKGROUND

### A.    The Fire Loss and Defendant's Investigation

Plaintiff Dat Bui owns real property at 95 E. Tomlin Station Road, Mickleton, New Jersey 08056 (the "Property"). (See Doc. No. 43-6 at 12:14-13:6.) Plaintiff Trang Dang is Dat Bui's ex-wife and resides at the Property with Dat Bui and their two children. (See id. at 12:24-13:9, 66:6-8.) Plaintiffs divorced prior to purchasing the Property, and Trang Dang holds no ownership interest in the Property. (See id. at 12:24-13:9.)

On April 4, 2018, Plaintiffs applied for insurance with Defendant Mid-Century Insurance Company to obtain coverage for the Property and other personal items. (See Doc. No. 43-8.) During the application process, Plaintiffs disclosed one prior fire loss that occurred on July 25, 2015 at 225 Buckingham Court, Williamstown, New Jersey 08094 (the "Buckingham Fire") for which they collected insurance proceeds.[1] (See id. at 5.) In fact, Plaintiffs had six prior fire loss

---

[1]    In a recorded statement, Plaintiffs' insurance agent, Fabian Howe, told Defendant that when he helped Dat Bui fill out the application for insurance on the Property, he never asked about prior losses. (See Doc. No. 43-16 at 22.) Howe apparently told Dat Bui that the system automatically pulls prior claims made in the last three years and that information is used on the application. (See id.)

claims and collected insurance proceeds on all of them.[2]  (See Doc. No. 42-1 at 15.)  On June 14, 2018, the insurance on the Property went into effect, and Trang Dang was listed as the primary insured.  (See Doc. No. 43-4 at 1.)

On July 11, 2018, Trang Dang went to Vietnam with her two children.  (See Doc. No. 43-7 at 11:15.)  On July 14, 2018, Dat Bui went to New York, and the next day, he left for Vietnam.  (See Doc. No. 43-5 at 100:4-6.)

On July 18, 2018, while Plaintiffs were in Vietnam, a fire destroyed the Property and rendered it uninhabitable.[3]  (See Doc. No. 43-19 at 2.)  Immediately after the fire occurred and before Plaintiffs returned from Vietnam, Defendant initiated a claim for the fire loss and began its post-loss investigation.  (See Doc. No. 43-9.)  The Gloucester County Fire Marshal, William L. Gigliotti, began his investigation as well.  (See Doc. No. 43-19.)

---

[2]   On April 16, 1989, a fire occurred at 6312 Saybrook Ave., Philadelphia, PA.  (See Doc. No. 41-1 at 15.)  An insurance claim for approximately $77,000 was paid to Dat Bui as a claimant.  (See id.)  On April 14, 2005, the second fire occurred at 6736 Grovers Ave., Philadelphia, PA.  (See id.)  An insurance claim for approximately $138,235 was paid to Dat Bui as the named insured.  (See id.)  The cause of the fire was undetermined.  (See id.)  On December 19, 2008, the third fire occurred at 75 E. Stewart Ave., Lansdowne, PA.  (See id.)  An insurance claim for approximately $441,123 was paid to Trang Dang and Dat Bui's sister, Trina Bui, as named insureds.  (See id.)  The cause of the fire was undetermined.  (See id.)  On February 15, 2013, the fourth fire occurred, again at 75 E. Stewart Ave., Lansdowne, PA.  (See id.)  An insurance claim for approximately $803,329 was paid to Plaintiffs as the named insureds.  (See id.)  The cause of the fire was undetermined.  (See id.)  On August 16, 2013, the fifth fire occurred at 25 Roberta Ave., Collingdale, PA.  (See id.)  An insurance claim for approximately $115,000 was paid to Dat Bui and Andrew Nguyen's business as the named insureds.  (See id.)  The cause of the fire was undetermined.  (See id.)  The sixth fire was the Buckingham Fire which Plaintiffs disclosed on their insurance application.  (See Doc. No. 43-8 at 5.)

[3]   The official Fire Investigation Report shows that the fire began on July 17, 2018.  (See Doc. No. 43-19.)  However, Defendant's internal claim records reflect that the date of loss was July 18, 2018.  (See Doc. No. 43-9 at 1.)  Plaintiffs do not dispute that the date of loss was July 18, 2018.  (See Doc. No. 41 at 2.)

On July 20 and 25, 2018, Defendant's Fire Investigator, John Goetz, examined the Property and concluded that the cause of the fire was arson.[4]  (See Doc. No. 43-21 at 15-16.)  On July 31, 2018, as part of its post-loss investigation, Defendant requested documents from Plaintiffs including: (1) documentation relating to the contents lost in the fire contained in what it referred to as the "Tomlin Content List;" (2) documentation relating to the purchase of the Property and any repairs; (3) personal and business tax records for the last three years; and (4) bank statements from January 1, 2018 to the present.[5]  (See Doc. No. 43-10 at 21-22.)

On August 13, 2018, as part of their request for additional living expenses, Plaintiffs' public adjuster sent Defendant a lease agreement.  (See Doc. No. 42-1, Ex. Q.)  The lease agreement was made between Plaintiffs' business partner, Andrew Nguyen, and Dat Bui.  (See id.)  Upon investigation by Defendant, however, it was discovered that Dat Bui owned the property on the lease.  (See Doc. No. 42-1 at 13.)  For this reason, Defendant rejected Plaintiffs' request for additional living expenses.  (See id.)

On August 25, 2018, Dat Bui returned to New Jersey.  (See Doc. No. 43-11 at 31.)  In October 2018, Plaintiffs provided Defendant with the Tomlin Content List.  (See Doc. Nos. 43-15 at 11; 43-24.)  The total cost of the 90 entries on the Tomlin Content List was approximately

---

[4]   Neither party disputes that the fire was incendiary in origin.  (See Doc. Nos. 41 at 2; 42-1 at 19.)

[5]   In a letter to Plaintiffs' public adjuster, Defendant also requested the following documents: (1) gas, electric, and water bills for the Property; (2) phone and text records from the date of the fire; (3) financial statements; (4) alarm records for the Property; (5) Federal and State Tax Returns from 2015 to 2017; (6) earning statements for July 2018; (7) receipts, photos, or other documentation for any contents that were lost in the fire; (8) credit card statements; (9) documentation of travel to Vietnam; and (10) documentation of any prior insurance on the Property.  (See Doc. No. 43-10 at 21-22.)

$96,000.  (See Doc. No. 43-24.)  Notably, the Tomlin Content List[6] itemized the following:

- Master Bedroom: (1) $12,000 memory foam sleep number king size mattress; (2) $19,000 bedroom set with a headboard, footboard, two nightstands, and a dresser[;]

- Older Son's Room: (1) $17,000 queen size bedroom set with mattress, headboard, footboard, two nightstands, and a dresser; (2) $41.97 castle mold assorted [beach toys;]

- Younger Son's Room: $2,318 queen size bedroom set with a mattress, headboard, and footboard[.]

(See id.)

According to Defendant, many items on the Tomlin Content List could not be located at the Property.  (See Doc. No. 43-21 at 27.)  In Fire Marshall Gigliotti's Fire Investigation Report, he noted a lack of noticeable remains of furniture in the living room and the bedrooms.  (See Doc. No. 43-19 at 5-6.)  He also noted that the "Older Son's Room" contained a bunkbed—rather than a queen bed—that was still intact.  (See id. at 5.)  In Goetz's investigation report, he explained that the "Master Bedroom" only contained a small amount of clothes and had no remains of dressers, beds, lamps, or end tables.  (See Doc. No. 43-21 at 18.)  Additionally, the kitchen contained a small number of dishes, glasses, pots, and pans.  (See id.)  His report suggests that there were no pictures, lamps, tables, or televisions in the family room, and the "Younger Son's Room" contained only one lamp and a bed.  (See id.)

Plaintiffs did not produce documentation supporting the purchase of items on the Tomlin Content List that could not be found at the Property and were unable to provide Defendant with

---

[6]   The headings in the Tomlin Content List do not match actual rooms in the Property, but they do match the rooms in Plaintiffs' home at Buckingham Court.  (See Doc. Nos. 43-24; 43-25.)  For example, the list includes items in a "Master Bedroom," "Older Son's Room," "Younger Son's Room," and "Basement," but there are only two bedrooms and a basement in the Property.  (See Doc. No. 43-24.)

the name of the stores where the items were purchased.  (See Doc. No. 43-5 at 97:9-25.)

Additionally, the Tomlin Content List contained entries identical to those on the content list

submitted for the prior insurance claim for the Buckingham Fire (the "Buckingham Content List").

(See Doc. Nos. 43-24 at 6; 43-25 at 15.)  Furthermore, both lists contained the same error—the

price of castle mold beach toys was listed as $41.97 instead of $4.19.  (See ids.)

On March 21, 2019, in an examination under oath conducted by Defendant,[7] Dat Bui said

that he and Trang Dang moved into the Property in the spring of 2018.[8]  (See Doc. No. 43-5 at

25:2-4.)  Trang Dang slept in a bedroom upstairs with a queen size bed, and he slept in the

basement.  (See id. at 66:19-25, 95:8-11.)  He was unable to recall the size of his bed in the

basement.  (See id. at 96:22-24.)  He also stated that his two children shared an upstairs bedroom

that contained a bunkbed.  (See id. at 66:14-16.)

On March 12, 2019, in her examination under oath, Trang Dang told Defendant that

Plaintiffs moved into the Property in the winter of 2017.  (See Doc. No. 43-7 at 18:10-18.)  She

slept on a queen size bed in an upstairs bedroom, Dat Bui slept on a queen size bed in the basement,

and the children slept in a bunkbed in an upstairs bedroom.  (See id. at 65:18-22, 69:4-5, 73:4-5.)

On September 17, 2019, Defendant sent a letter to Plaintiffs denying their insurance claim.

(See Doc. No. 41, Ex. A.)  The letter reads in part:

> The investigation of this matter has revealed that you made material
> misrepresentations relative to the loss.  This includes, but is not limited to, material
> statements concerning the contents that were in the property at the time of loss.

---

[7]  Defendant did not conduct the examinations under oath until it received the Tomlin Content List.  (See Doc. No. 43-15 at 3.)

[8]  Several statements Dat Bui made in his examination under oath allegedly contradicted statements he made in a prior interview on September 11, 2018.  (See Doc. No. 43-22.)  In that interview, Dat Bui told Defendant that he and Trang Dang moved into the Property in the summer of 2017.  (See id. at 2-3.)  Dat Bui also referred to Trang Dang as his wife multiple times.  (See id.)

Additionally, our investigation has revealed that the fire was intentionally set and you had a motive and the opportunity to cause the fire to be set.

Furthermore, [Defendant] has not received complete information relative to the following document requests:

1. Any and all photographs, or video tapes of the home or its contents prior to the fire; or documentation to support the purchase of the contents;

2. Any and all documentation related to the purchase of the property, repairs to the property; or the subject fire;

3. All personal and business income tax records for the last three years for both Trang Dang and Dat Bui;

4. Statements from all investments/equity/bank accounts in the names of both Dat Bui and Trang Dang, from January 1, 2018, through the present[.]

(Id. at 1.)  Moreover, "a complete set of financial records for both Trang Dang and Dat Bui have not been produced.  Nor have any of [the] supporting records relating to the contents or repairs to the home . . . been produced."  (Id.)  Therefore, the letter explained that Defendant "is prejudiced without this information."  (Id.)  In support of its claim denial, the letter then cites the relevant sections of the insurance policy which read as follows:

3.     Duties After Loss.

       In case of covered loss or damage to property, it is your responsibility to:
***
       e.     as often as we reasonably require
***
              (2)     provide us with records, documents and other information we may request, and permit us to make copies. This includes, but is not limited to banking records, asset, debt and income information, records and documents, credit history and other financial records, prior insurance losses with us or other insurers, or receipts for property damaged, if obtainable;
***

11.     Intentional Acts, Criminal Acts, and Fraud.

7

We do not provide coverage for loss or damage if any insured has before or after the loss or in relation to any insurance provided in this policy:

    a.    concealed or misrepresented any material fact or circumstance;

    b.    intentionally caused or arranged for the loss or damage;

    c.    directly or indirectly caused the loss or damage while committing or concealing a felony as defined by either federal or state law;

    d.    engaged in fraudulent conduct; or

    e.    made material, false statements.

. . . .

4.    Misrepresentation, Concealment or Fraud.

    a.    We reserve the right to deny coverage for any loss or damage or claim for injury or damage or, as permitted by law, to void this policy, including but not limited to from its inception, if you or any insured has, at any time either before or after a claim or loss:

    (1)    negligently or fraudulently concealed, omitted or misrepresented any material fact or circumstance:

    i.    in the application for, change to or renewal of this insurance; or

    ii.    in the presentation of a claim or loss; or during our investigation of a claim or loss; or

    (2)    engaged in fraudulent conduct with respect to a claim or loss.

(Id. at 2-3; see also Doc. No. 43-4 at 35-51.)

**B.    This Case**

On October 9, 2019, Plaintiffs filed suit against Defendant in the Superior Court of New Jersey alleging: (1) breach of contract; (2) violation of the New Jersey Consumer Fraud Act, codified in N.J.S.A. §§ 56:8-1 et seq.; and (3) bad faith.  (See Doc. No. 1-1 ¶¶ 7-9.)  In support of each claim, Plaintiffs assert that Defendant had no valid reason to deny their insurance claim.  (See id. ¶ 6.)  They aver that "[t]he basis claimed for [D]efendant's denial of [P]laintiffs' claim is false." (Id.)  Plaintiffs also aver that Defendant took an unreasonable amount of time to render a decision on the claim as "Defendant's carrier, some 14 months after the claim, denied the claim."  (Id. ¶ 5.)

8

In support of the Consumer Fraud Act claim, Plaintiffs allege that "the fourteen month plus delay in making a decision concerning [P]laintiffs' claim constitutes an unconscionable commercial practice[.]"  (Id. ⁋ 8.)

On November 11, 2019, Defendant removed this case to federal court.  (See Doc. No. 1.) That same day, Defendant filed an Answer in which it denied nearly all of Plaintiffs' allegations and asserted affirmative defenses.   (See Doc. No. 2.)   In response to Plaintiffs' allegations regarding breach of contract and bad faith, Defendant leaves as an affirmative defense that Plaintiffs' insurance claim falls within the following policy exclusions: (1) Misrepresentation, Concealment or Fraud, (2) Intentional Acts, Criminal Acts, and Fraud; and (3) and Duties after Loss.  (See id. at 2-4.)  Defendant also alleges as affirmative defenses that Plaintiffs: (1) made material misrepresentations, (2) committed arson, and (3) failed to cooperate with the post-loss investigation.[9]  (See id. at 5-7.)

### 1.    Plaintiffs' Cross-Motion for Summary Judgment

On April 12, 2021, Plaintiffs filed the Cross-Motion for Summary Judgment.  (Doc. No. 41.)  Plaintiffs' Cross-Motion requests summary judgment in their favor because "[D]efendant[] ha[s] not produced any evidence that would satisfy its burden of proof in justifying its denial of [P]laintiffs' insurance claim and . . . [D]efendant[] ha[s] produced no evidence as to similarities between the subject fire and past fires that would allow for the admission of evidence as to the prior fires[.]"  (Id. at 13.)

Plaintiffs first argue that Defendant failed to produce evidence justifying its denial of the claim.  (See id. at 10.)  Plaintiffs' Cross-Motion references the denial letter and avers that the "four-page letter sets out the policy language or contains other boilerplate language."  (Id.)  However,

---

[9]    The Answer sets forth thirteen defenses, but the Court only will discuss the three that serve as the basis for Defendant's Cross-Motion for Summary Judgment.  (See Doc. No. 2 at 5-7.)

Plaintiffs contend that "[n]o where in that letter is there any description of what the material misrepresentations might have been, nor how it is the [P]laintiffs had a motive and opportunity to cause the fire to be set or how in any way any materials allegedly not supplied are prejudicial." (Id.)

Second, Plaintiffs argue that Defendant failed to provide adequate discovery.  (See id. at 10-11.)  Plaintiffs rely on Defendant's responses to interrogatories.  (See id., Ex. B.)  Based on Defendant's responses, "[P]laintiffs have no idea what material misrepresentations are alleged to have been made and how it is those allegations might be material."  (Doc. No. 41 at 11.) Furthermore, "[P]laintiffs have no idea what motive they might have had to intentionally set the fire nor any idea as to what opportunity they might have had to cause the fire to be set." (Id.) And "[D]efendant [has not] explained or justified its claim of not receiving 'complete information' when [P]laintiffs have said that they presented every requested document that they had."  (Id.)

Finally, Plaintiffs argue that evidence of their prior fire losses is inadmissible because they are not similar enough to the instant fire loss.  (See id.)  Plaintiffs submit that "the only shared item is that at the time of the 2015 Buckingham Court fire the [P]laintiffs were in Vietnam." (Id.)  In addition, "[n]one of the . . . prior fire claims involving [P]laintiffs were determined to be arson." (Id.)  "The only common fact in the . . . fires was that those [prior] fires occurred at property owned by [P]laintiffs."  (Id.)

### 2. Defendant's Response to Plaintiffs' Cross-Motion for Summary Judgment

On May 17, 2021, Defendant filed a Response to Plaintiffs' Cross-Motion for Summary Judgment in which it argues Plaintiffs' Cross-Motion should be denied because it "has produced incontrovertible evidence that justified its denial of Plaintiffs' claim." (Doc. No. 47 at 1.)

In response to Plaintiffs' assertion that Defendant failed to produce sufficient evidence to justify its denial of the insurance claim, Defendant argues that it produced sufficient evidence to support its denial, which was based on: (1) Plaintiffs' misrepresentations relative to the claim; (2) arson; and (3) Plaintiffs' lack of cooperation with the claim investigation.  (See id. at 4, 12, 15.)

Regarding Plaintiffs' misrepresentations, Defendant argues that "the evidence undisputedly establishes that Plaintiffs made material misrepresentations during the post-loss investigation of their claim."  (Id. at 11.)  First, Defendant notes that "Plaintiffs provided conflicting testimony multiple times regarding when they began residing at the . . . Property."  (Id. at 7.)  Next, Defendant points out that "Plaintiff Dat Bui concealed the fact that he and Plaintiff Trang Dang were no longer married."  (Id. at 8.)  Defendant notes that Trang Dang was listed as the "Primary Named Insured" on the policy despite holding no ownership interest in the Property.  (See id. at 9.)  Next, Defendant claims "Plaintiffs misrepresented their prior loss history by only disclosing one prior fire when Plaintiffs have admittedly been involved in at least six prior fire losses."  (Id. at 10.)  Lastly, Defendant argues that Plaintiffs made misrepresentations relating to the items listed on the Tomlin Content List.  (See id.)

With respect to arson, Defendant argues that "[t]he undisputed evidence demonstrates that Plaintiffs had both motive and opportunity to set the fire."  (Id. at 12.)  In support of its argument, Defendant notes Plaintiffs were not home during any of the fires and they stood to benefit from payment of the claims associated with each fire loss.  (See id. at 14.)

Regarding Plaintiffs' failure to cooperate with the claim investigation, Defendant relies on Plaintiffs' failure to produce a complete set of financial records.  (See id. at 15.)  Without this information, Defendant asserts it is prejudiced.  (See id.)  Defendant further argues that Plaintiffs' financial records were necessary to its investigation because arson was the cause of the fire.  (See

11

id.)

Defendant denies that it failed to provide adequate discovery, and states that it turned over voluminous records.  (See id. at 17.)  "Plaintiffs ask this . . . Court to ignore (1) the Application; (2) the investigation that was conducted by Gloucester County Fire Marshal William L. Gigliotti; (3) the investigation by [Defendant's] Fire Investigator, John Goetz; (4) the initial disclosures which contained the production of [Defendant's] investigation file . . . [containing] approximately 4,273 pages of documents; (5) the Policy; (6) the denial letter; (7) . . . depositions and receipts provided by Plaintiffs; and (8) the records received via subpoena."  (Id. at 16.)  Defendant also argues that "Plaintiffs never filed a motion to compel or a motion for more responsive answers."  (Id. at 19.)  And "Plaintiffs only propounded interrogatories, they did not take any depositions although a number of witnesses were listed on [Defendant's] initial disclosures[.]"  (Id.)

Finally, in response to Plaintiffs' argument that evidence of prior fire losses is inadmissible, Defendant insists this argument fails for several reasons.  (See id. at 21.)  First, Defendant avers that "[Plaintiffs'] argument should be made in a motion in limine" rather than in a motion for summary judgment.  (Id. at 22) (emphasis omitted).  Second, Defendant argues that evidence of Plaintiffs' prior fire losses is admissible because it is relevant, and its probative value outweighs its prejudicial effect.  (See id.)

### 3.    Defendant's Cross-Motion for Summary Judgment

On April 26, 2021, Defendant filed the Cross-Motion for Summary Judgment that also is before the Court.  (Doc. No. 42.)  In the Cross-Motion, Defendant asks the Court to grant summary judgment in its favor on all three claims in the Complaint: (1) breach of contract, (2) Consumer Fraud Act, and (3) bad faith.  (See Doc. No. 42-1 at 1.)

With respect to the breach of contract claim, Defendant makes the same assertions that are made in its Response to Plaintiffs' Cross-Motion for Summary Judgment concerning its three

defenses: (1) misrepresentation, (2) arson, and (3) failure to cooperate.  (See id. at 6-22.)  In addition to the misrepresentations set forth in the Response, Defendant adds in its Cross-Motion that "Plaintiffs also made material misrepresentations relative to their claim for additional living expenses."  (Id. at 13.)

Next, in further support of its arson defense, Defendant notes that "it is undisputed that the fire was incendiary."  (Id. at 19.)  Defendant argues that "[t]he undisputed evidence demonstrates that Plaintiffs had both motive and opportunity to set the fire."  (Id.)  "The instant fire is consistent with a pattern that has emerged demonstrating Plaintiffs' overall modus operandi of submitting fraudulent claims."  (Id.)  For example, "[f]or at least three of the fires including [the] most recent fire . . . Plaintiffs were in Vietnam with Plaintiff Trang Dang leaving with the kids first and then Plaintiff Dat Bui leaving separately a day or two before the fire occurred."  (Id. at 20.)  Additionally, Defendant avers that "Plaintiffs motive for the fire was clearly financial[,]" since "Plaintiffs have conservatively collected over two million dollars in insurance proceeds since 2005."  (Id.)

Defendant also offers additional support to show Plaintiffs failed to cooperate during the investigation.  (See id. at 21.)  Defendant notes that "after years of insisting that they have no records of repairs made to the property prior to the loss, Plaintiffs produced multiple receipts they claim were for supplies bought to repair the house."  (Id. at 22.)  However, "the receipts are generic [and] non-specific."  (Id.)

Next, Defendant seeks summary judgment on the Consumer Fraud Act claim because "Plaintiffs' claim is about the improper denial of coverage, which is not covered by the [Consumer Fraud Act]."  (Id. at 26.)  Defendant argues that "[t]heir claims depend entirely on an 'initial coverage dispute' . . . as opposed to the 'fraudulent discontinuation of previously authorized

benefits'" that the Consumer Fraud Act is meant to address. (Id.)

Finally, Defendant submits it is entitled to summary judgment on the bad faith claim because it had a reasonable basis for denying Plaintiffs' insurance claim. (See id.) Defendant argues that "Plaintiffs have not adduced evidence that any delay in the processing of Plaintiffs' claim for property damages rises to the level of bad faith." (Id. at 28.) Defendant notes that "timely investigations were performed by both [Defendant's] adjuster . . . and . . . [i]nvestigator[.]" (Id.) Moreover, "[i]t took over [three] months to secure a contents list from Plaintiffs and over [eight] months to secure examinations under oath of Plaintiffs based on their availability and repeated cancellations." (Id.) In Defendant's view, "the delay . . . was solely attributable to Plaintiffs." (Id.) In sum, the denial "was based on a detailed investigation which revealed material misrepresentations made in the application and during the post-loss investigation." (Id.)

### 4.   Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment and Defendant's Reply

On May 25, 2021, Plaintiffs filed a Response to Defendant's Cross-Motion for Summary Judgment. (Doc. No. 49.) In Plaintiffs' view, Defendant has "actively conceal[ed] relevant information." (Id. at 3.) They aver that Defendant's "denial of [P]laintiff[s'] claim was general and broad, lacking in facts in the apparent hope [P]laintiffs would go away." (Id. at 4.) And "[t]he actions of [D]efendant . . . have made it impossible for [P]laintiffs to investigate and rebut what is now presented as facts." (Id. at 3.) According to Plaintiffs, "[i]f [D]efendant has a problem here it is of [its] own doing." (Id.)

First, in response to Defendant's misrepresentation argument, Plaintiffs aver that "[D]efendant has failed to show how conflicting evidence as to when [P]laintiffs began residing at the property is at all material to anything." (Id.) They then argue that "the state of [P]laintiffs' marriage is not relevant to any issue here . . . and [D]efendant's application asks nothing about

14

marriage."    (Id.)    Plaintiffs then assert that "the [Tomlin] [C]ontent [L]ist has not been demonstrated to be untrue." (Id.)  With respect to the additional living expenses, they claim "there has been no showing of how the apparent confusion here was in anyway material." (Id.)  Finally, Plaintiffs claim that in "[P]laintiffs' mind[s] this was the family home owned by the family which included both parents." (Id.)

In addressing Defendant's arson defense, Plaintiffs argue that "[D]efendant failed to provide any evidence of motive or opportunity on the part of [P]laintiffs[.]" (Id.)  They claim Defendant's arson defense is "demonstratively false as there has been no showing of any fraudulent insurance claims." (Id. at 4.)  Moreover, "case law requires a showing of similarity[,] and the instant fire is the only fire involving an arson." (Id.)

In response to Defendant's argument that Plaintiffs did not cooperate with post-loss investigation, Plaintiffs insist that "[i]n the course of the investigation[, P]laintiffs supplied [D]efendant[] with everything they had." (Id.)  Finally, regarding Defendant's request for summary judgment on the Consumer Fraud Act and bad faith claims, Plaintiffs contend that both claims "are dependent on ultimate factual findings." (Id.)  They then submit that their "theory of the case is that [D]efendant had no basis for denial of the claim[,] and if the Court limits its review to what was provided in discovery[, then Plaintiffs'] theory is incorrect." (Id.)

On June 1, 2021, Defendant filed a Reply to Plaintiffs' Response.  (Doc. No. 55.) Defendant posits that Plaintiffs made "glaring misstatements . . . in an attempt to create issues of fact when none exist." (Id. at 1.)  Defendant maintains that "Plaintiffs continue to dubiously argue that [Defendant] did not produce documents evidencing and/or outlining Plaintiffs['] material misrepresentations.  Nothing could be further from the truth." (Id.)

15

## III.     STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).   A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (citing Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  See Anderson, 477 U.S. at 247-49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  See id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record

16

regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  See id. at 250.

Here, the parties filed Cross-Motions for Summary Judgment.  "The same standards and burdens apply on cross-motions for summary judgment."  Allah v. Ricci, 532 F. App'x 48, 50 (3d Cir. 2013) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987)).  "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'"  Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 430 (M.D. Pa. 2006) (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir. 2006)).  "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts."  Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998)).

## IV.   ANALYSIS

As previously noted, both parties filed Cross-Motions for Summary Judgment.  (Doc. Nos. 41-42.)  In Defendant's Cross-Motion, it first asks that the Court grant summary judgment in its favor on Plaintiffs' breach of contract claim because Plaintiffs made misrepresentations in their application and during the post-loss investigation.  (See Doc. No. 42-1 at 8-17.)  Defendant also seeks summary judgment on that claim because it avers that Plaintiffs committed the arson that caused the fire loss, and because they failed to cooperate with the post-loss investigation.  (See id. at 18-22.)  Defendant then asks the Court to grant summary judgment in its favor on the Consumer Fraud Act claim because the statute does not apply to the facts of this case.  (See id. at 23-26.)  Lastly, Defendant seeks summary judgment on the bad faith claim because it had a reasonable basis for denying Plaintiffs' insurance claim and it took a reasonable amount of time to render a

decision on the claim.  (See id. at 26-28.)

In Plaintiffs' Cross-Motion, they ask that the Court grant summary judgment in their favor because: (1) Defendant did not produce evidence justifying its denial of Plaintiffs' claim, (2) Defendant failed to provide adequate discovery, and (3) Plaintiffs' past history of submitting insurance claims after a fire loss is irrelevant.  (See Doc. No. 41 at 7-11.)  Each Cross-Motion will be discussed in turn.

### A.    Defendant's Cross-Motion for Summary Judgment

As noted, in Defendant's Cross-Motion, it seeks summary judgment on each claim in the Complaint: breach of contract, Consumer Fraud Act, and bad faith.  (See Doc. No. 42-1 at 1.)  As discussed below, Defendant's Cross-Motion for Summary Judgment will be granted in part and denied in part.  Summary judgment will be granted on the Consumer Fraud Act and bad faith claims and will be denied on the breach of contract claim.

### 1.    Breach of Contract

Defendant contends there is no genuine dispute of material fact and that, as a matter of law, it properly denied the fire loss claim because: (1) Plaintiffs misrepresented their marital status, ownership interest in the Property, prior loss history, items damaged in the fire, and additional living expenses; (2) Plaintiffs committed the arson that resulted in the fire loss; and (3) Plaintiffs failed to cooperate with the fire loss investigation by not submitting necessary documents.  (See id. at 1-3.)  As noted earlier, Plaintiffs argue to the contrary.

### a.    Misrepresentation

First, Defendant claims that Plaintiffs made material misrepresentations in their application for insurance and during the post-loss investigation.  (See id. at 2.)  It is well established New Jersey law that an insurer may deny an insured's claim if the insured violates the policy's "concealment or fraud" provision.  See Longobardi v. Chubb Ins. Co. of New Jersey, 582 A.2d

1257, 1258 (N.J. 1990) ("[W]hen an insurance policy clearly states that material misrepresentations will void the policy, the insurer need not pay the insured for an alleged loss if the insured makes a material misrepresentation to the insurer while it is investigating the claim."). As the New Jersey Supreme Court has noted:

> When an insurer clearly warns in a "concealment or fraud" clause that it does not provide coverage if the insured makes a material misrepresentation about any material fact or circumstance relating to the insurance, the warning should apply not only to the insured's misrepresentations made when applying for insurance, but also to those made when the insurer is investigating a loss. Such misrepresentations strike at the heart of the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims. Thus, an insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.

Id. at 1261.

An innocent mistake or lapse is not sufficient to void a policy; rather, the insured's misrepresentation must be knowing and material.[10]  See id.  A misrepresentation is material if "a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action."  Id. at 1263.  Typically, materiality is a question for the jury.  See Maryland Ins. Co. v. Ruden's Adm'r, 10 U.S. 338, 339-40 (1810) ("It is well settled that the operation of any concealment on the policy depends on its materiality to the risk, and this court has decided that this materiality is a subject for the consideration of a jury."); see also Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 279-80 (D.N.J. 2011); Thomas v. N.J. Ins.

---

[10]  For misrepresentations occurring before the loss, e.g., on the insurance application or policy, the doctrine of equitable fraud may be applied by an insurer as a basis to rescind the policy. See First Am. Title Ins. Co. v. Lawson, 827 A.2d 230, 237 (N.J. 2003); Those Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. Buy1780 v. Cleopatra, LLC, No. A-1312-12T3, 2013 WL 6081460, at *10 (N.J. Super. Ct. App. Div. 2013).  Equitable fraud does not require the misrepresentation to be knowing. See ids.  Here, Defendant does not assert equitable fraud, so the Court will apply the same standard to the alleged pre and post-loss misrepresentations.

Underwriting Ass'n (NJIUA), 649 A.2d 1383, 1384 (N.J. Super. Ct. Law. Div. 1994).

However, "[e]ven absent fault, New Jersey courts consider prior loss history material to the underwriting of insurance risks, recognizing insurers rely on prior loss information when issuing policies. . . . In this context, accurate prior loss history is both material and highly relevant because it serves as a good predictor of future loss."  Those Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. Buy1780 v. Cleopatra, LLC, No. A-1312-12T3, 2013 WL 6081460, at *10 (N.J. Super. Ct. App. Div. Nov. 20, 2013) (internal quotations and citations omitted).  In other words, prior loss history is material as a matter of law.[11]  See id.

Here, Defendant claims that Plaintiffs made material misrepresentations in their application for insurance and during the post-loss investigation.  (See Doc. No. 42-1 at 5, 14.) With respect to the application for insurance, Defendant notes that Trang Dang is listed as the primary insured, even though she has no ownership interest in the Property.  (See id. at 15.)  While Plaintiffs do not dispute that Trang Dang does not legally own the Property, they argue that they believed Trang Dang did own the Property when they filled out the application.  (See Doc. No. 49 at 3.)  Thus, there is a genuine dispute of material fact regarding whether this alleged misrepresentation on the application was knowing.

With respect to the post-loss investigation, Defendant argues that Plaintiffs: (1) made contradictory statements regarding when they moved into the Property; (2) represented themselves

---

[11]  See also In re Payroll Exp. Corp., 216 B.R. 344, 357 (S.D.N.Y. 1997), aff'd sub nom. In re Payroll Express Corp., 186 F.3d 196 (2d Cir. 1999) (internal quotations and citations omitted) (interpreting New Jersey law and concluding that "[t]he materiality of an insured's misrepresentation to an insurer is ordinarily a factual question left for the jury's determination, but where reasonable minds could reach only one conclusion as to that issue the court must resolve it as a matter of law.  Courts throughout the United States have recognized that common sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium.").

as married, despite having been divorced; (3) lied about the contents of the home on the Tomlin Content List; and (4) requested additional living expenses for a property that Dat Bui owned.  (See Doc. No. 42-1 at 7-14.)  Conversely, Plaintiffs insist that: (1) the date they moved into the Property; (2) the fact that Dat Bui referred to Trang Dang as his wife in interviews; and (3) their request for additional living expenses are all immaterial to Defendant's investigation.  (See Doc. No. 49 at 3.) Plaintiffs also argue that the Tomlin Content List does not misrepresent their personal property damaged in the fire.  (See id.)

According to Plaintiffs, statements on the exact date they moved into the Property did not hinder the investigation into the fire loss.  (See id.)  Moreover, their language barrier combined with their living arrangement provides a reasonable explanation as to why Plaintiffs refer to themselves as married.  (See id. at 1, 3.)  Plaintiffs also maintain that the items on the Content List were in the home, but portions of the home were so severely burned that remains of some items could not possibly be found.  (See id. at 2.)  Lastly, Plaintiffs aver that when they submitted the request for additional living expenses, they made a minor error that is typical in the insurance recovery process, and they rectified the mistake by submitting a new lease for a property that they did not own.  (See id. at 3.)

As such, it is evident that there exists a genuine dispute of material fact over whether Plaintiffs made misrepresentations to Defendant in their insurance application and during Defendant's post-loss investigation.  And because these material facts "cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."  Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

21

### b.      Arson

Next, Defendant relies on arson as a defense to Plaintiffs' breach of contract claim.  (See Doc. No. 42-1 at 18.)  At a minimum, an arson defense to a civil claim for insurance coverage requires the insurer to prove that: (1) the loss resulted from a fire that was incendiary in origin; (2) the insured had an opportunity to set the fire; and (3) the insured had a motive to set the fire.  See Rena, Inc. v. Brien, 708 A.2d 747, 751 (N.J. Super. Ct. App. Div. 1998) (citing Alexander v. Tenn. Farmers Mut. Ins. Co., 905 S.W.2d 177, 179 (Tenn. Ct. App. 1995)).  The insurer has the burden of proving "by a preponderance of the evidence, circumstantial or direct, 'that plaintiff either set fire to the building[] or caused such to be done.'"  Id. (quoting Crossley v. Allstate Ins. Co., 362 N.W.2d 760, 762 (Mich. Ct. App. 1984)).  However, an arson defense can be proven by entirely circumstantial evidence.  See id. at 751; Great Am. Ins. Co. v. K&W Long, Inc., 591 P.2d 457, 460 (Wash. Ct. App. 1979).  This is because "[i]ncendiary fires are planned and executed covertly and seldom lend themselves to proof by direct evidence."  Great Am. Ins. Co., 591 P.2d at 460.

Here, the parties do not dispute that the fire was incendiary in origin; rather, the parties dispute whether Plaintiffs had the motive and opportunity to cause the fire.  Defendant seeks to invoke the doctrine of chances to prove Plaintiffs had motive.  (See Doc. No. 42-1 at 20) (citing People v. Mardlin, 790 N.W.2d 607, 612-13 (Mich. 2010) (explaining that the doctrine of chances is the theory that, "as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes.")).[12]  In response, Plaintiffs insist they did not

---

[12]  In People v. Mardlin, the court further explained that "[i]f a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance."  People v. Mardlin, 790 N.W.2d 607, 613 (Mich. 2010).

play a role in starting the fire and point out Defendant's lack of direct evidence confirming the contrary.  (See Doc. No. 49 at 3-4.)  As explained in Section III, supra, whenever a factual issue arises which cannot be resolved without a credibility determination, at the summary judgment stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  See Anderson, 477 U.S. at 255.  Here, the entirety of Defendant's arson defense rests upon circumstantial evidence—the credibility of which must be weighed by a jury.

### c.     Failure to Cooperate

Lastly, Defendant argues that it did not breach the insurance policy by denying the claim because Plaintiffs failed to cooperate with the post-loss investigation.  (See Doc. No. 42-1 at 21.)  Typically, a cooperation clause in an insurance policy is a contract provision that, in part, requires insureds to comply with the insurer's requests during the investigation of a claim.  See Selective Ins. Co. v. Mauro, No. 0513-04T5, 2005 WL 3691162, at *7 (N.J. Super. Ct. App. Div. Jan. 23, 2006).  If an insurer seeks to rescind an insurance policy due to an insureds breach of the policy's cooperation clause, then the insurer must prove that the insured "deliberately breached [the cooperation clause] in a material and essential particular."  Pearl Assur. Co. v. Watts, 174 A.2d 90, 95 (N.J. Super. Ct. App. Div. 1961).  With respect to the insured's responsibilities, New Jersey courts have made clear that if an insured is not sure whether they must produce certain documents during the course of a post-loss investigation, then they must expeditiously file a declaratory judgment action to obtain a judicial ruling on the matter.  See DiFrancisco v. Chubb Ins. Co., 662 A.2d 1027, 1029 (N.J. Super. Ct. App. Div. 1995).  Moreover, when a loss involves arson, documents pertaining to an insured's financial condition are highly relevant to an insurer's investigation, especially when the request for those documents is reasonable and specific.  See DeMasi v. Lexington Ins. Co., No. 1638-08, 2010 WL 3075674, at *5 (N.J. Super. Ct. App. Div.

July 23, 2010); Ransom v. Selective Ins. Co., 550 A.2d 1006, 1007-08 (N.J. Super. Ct. Law Div. 1988).

Here, it is not disputed that Plaintiffs failed to provide certain financial documents relevant to Defendant's post-loss investigation.  Instead, the parties dispute whether the missing documents are lost.  Defendant submits that Plaintiffs are willfully withholding certain financial documents that they believe will show Plaintiffs' financial motive to start the fire.  (See Doc. No. 42-1 at 22.) Plaintiffs conversely aver that they have made a good faith effort to submit all documentation they have, and anything that was not submitted was lost in the fire.  (See Doc. No. 49 at 2-3.)  Whether the missing documents were destroyed is genuinely disputed by both parties and hinges upon testimony regarding the whereabouts of those documents.  As such, this issue should be assessed by a jury.

In sum, there exists a genuine dispute of material fact as to whether or not Defendant breached the insurance policy and whether Defendant's affirmative defenses justify its denial of Plaintiffs' fire loss claim.  Accordingly, Defendant's Cross-Motion for Summary Judgment (Doc. No. 42) will be denied on the breach of contract claim.

### 2.    Consumer Fraud Act

Next, Defendant argues that Plaintiffs have failed to provide any evidence that supports their claim under the Consumer Fraud Act, codified in N.J.S.A. § 56:8-1 et seq.  (See Doc. No. 42-1 at 23.)  Defendant asserts summary judgment should be granted in its favor with respect to this claim because the Consumer Fraud Act does not apply to initial coverage disputes.  (See id. at 26.)

The purpose of the Consumer Fraud Act is to "provide[] relief to consumers from 'fraudulent practices in the market place.'"  Lee v. Carter-Reed Co., LLC, 4 A.3d 561, 576 (N.J. 2010) (quoting Furst v. Einstein Moomjy, Inc., 860 A.2d 435, 440 (N.J. 2004)).  The Consumer Fraud Act provides in part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J.S.A. § 56:8-2.

Fraud and misleading behavior are inherent to a Consumer Fraud Act violation. See Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir. 1998).  However, New Jersey courts have consistently held that the Consumer Fraud Act does not apply to initial coverage disputes. See id.; see also Nationwide Mut. Ins. Co. v. Caris, 170 F. Supp. 3d 740, 746 (D.N.J. 2016); Myska v. N.J. Mfrs. Ins. Co., 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015).

Here, the case involves an initial coverage dispute based on Defendant's denial of Plaintiffs' fire loss claim.  (See Doc. No. 1-1 ⁋⁋ 5-6, 8.)  Moreover, the record is devoid of any evidence of fraud by Defendant.  For these reasons, Plaintiffs' Consumer Fraud Act claim fails as a matter of law, and Defendant's Cross-Motion for Summary Judgment (Doc. No. 42) will be granted on the Consumer Fraud Act claim.

### 3.   Bad Faith

Lastly, Defendant requests summary judgment on Plaintiffs' bad faith claim and insists that there was a reasonable basis for denying the insurance claim.  (See Doc. No. 42-1 at 26.) Defendant also submits that the time it took to make a decision on the claim was reasonable considering the circumstances.  (See id.)  Conversely, Plaintiffs aver that the bad faith claim is "dependent on ultimate factual findings."  (Doc. No. 49 at 4.)

It is well established that in every insurance policy, there exists an implied promise by the insurer to render claim decisions and pay insurance benefits in good faith.  See Pickett v. Lloyd's, 621 A.2d 445, 450 (N.J. 1993); Johnson v. Liberty Mut. Ins. Co., No. 10-494, 2010 WL 2560489, at *2 (D.N.J. June 24, 2010).  However, an insurer can act in bad faith in either denying or processing an insurance claim.  See Titley v. Hanover Ins. Co., No. 1:18-13388, 2020 WL 5229387, at *3 (D.N.J. Sept. 2, 2020); Johnson, 2010 WL 2560489, at *2.

In order for an insured to sustain a bad faith claim premised on an insurer's claim denial, the insured must show that the insurer clearly lacked a reasonable basis for denying coverage.  See Van Holt, 163 F.3d at 168; Watson v. Liberty Mut. Fire Ins. Co., No. 19-11994, 2020 WL 4016036, at *3 (D.N.J. July 16, 2020); Badiali v. N.J. Mfrs. Ins. Group, 107 A.3d 1281, 1288 (N.J. 2015); Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 334 (D.N.J. 1996).  But if determining whether the insurer lacked a reasonable basis for denying a claim is "fairly debatable," then the insured cannot prevail on a bad faith claim.  Pickett, 621 A.2d at 453 (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)).  In other words, if an insured cannot succeed on their substantive claim at summary judgment, then they cannot succeed on a bad faith claim premised on an insurer's denial of coverage.  See id. at 454; Badiali, 107 A.3d at 1288; Watson, 2020 WL 4016036, at *3.

Under New Jersey law, the "fairly debatable" standard also applies to bad faith claims based on an insurer's delay in processing a claim.  See Pickett, 621 A.2d at 454; Titley, 2020 WL 5229387, at *3; Johnson, 2010 WL 2560489, at *2.  When a bad faith claim is based on delay, the analysis remains the same.  See Pickett, 621 A.2d at 454.  The insured must show that there was "no valid reason to delay and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay."  Titley, 2020 WL 5229387, at *3 (quoting Pickett, 621 A.2d

at 457-58).  But if the insured cannot succeed on summary judgment for its substantive claim, then it cannot prevail on a bad faith claim based on delay.  See Pickett, 621 A.2d at 454; Granelli v. Chicago Title Ins. Co., 569 F. App'x 125, 131-32 (3d Cir. 2014); Titley, 2020 WL 5229387, at *3; Enright v. Farm Family Cas. Ins. Co., No. 03-4850, 2005 WL 3588485, at *8 (D.N.J. Dec. 29, 2005); Johnson, 2010 WL 2560489, at *2.

Here, as stated in Section IV.A, supra, genuine disputes of material fact exist with respect to Plaintiffs' substantive claim—breach of contract.  As a result, Plaintiffs "cannot establish as a matter of law a right to summary judgment" on their substantive claim, and "cannot succeed on [their] claim for bad faith[.]"  Watson, 2020 WL 4016036, at *2.  Accordingly, Defendant's Cross-Motion for Summary Judgment (Doc. No. 42) will be granted on the bad faith claim.

### B. Plaintiffs' Cross-Motion for Summary Judgment

The essence of Plaintiffs' Cross-Motion for Summary Judgment lies in the assertion that, during discovery, Defendant failed to provide any evidence supporting its defenses and it should not be allowed to do so now.  (See Doc. No. 41 at 10-11.)  Plaintiffs insist that Defendant is attempting to engage in a "trial by ambush."  (Id. at 10.)  Plaintiffs also assert that Defendant failed to put forth evidence supporting its defenses and rationale for denying Plaintiffs' insurance claim. (See id. at 9-11.)

Federal Rule of Civil Procedure 56 states that a party moving for summary judgment must "identify[] each claim or defense--or the part of each claim or defense--on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Plaintiffs' Cross-Motion for Summary Judgment does not identify a claim or defense upon which they believe they are entitled to summary judgment. However, in the interest of judicial economy, the Court will construe the Cross-Motion as requesting summary judgment on their breach of contract and bad faith claims.

27

1.      **Defendant's Discovery Obligations**

First, Plaintiffs contend that they are entitled to summary judgment because despite having completed discovery, they have no idea what evidence Defendant intends to use in support of its defenses.  (See Doc. No. 41 at 11.)  In response, Defendant maintains that it provided adequate fact discovery and Plaintiffs have not looked closely enough at the documents that were provided.  (See Doc. No. 47 at 16.)[13]  Defendant also notes that Plaintiffs hardly participated in discovery and did not take any steps to compel further discovery from Defendant.  (See id. at 19-20.)

Here, Plaintiffs' request for summary judgment is a blithe attempt to raise an alleged discovery issue.  Plaintiffs point to Defendant's responses to interrogatories and note the responses where Defendant objects to the question.  (See id. at 8.)  They never moved, however, pursuant to Rule 37[14] for any relief, and they also largely ignore the more than four thousand pages of the

---

[13]   At a hearing held on July 14, 2021, Plaintiffs initially represented to the Court that over one thousand pages of the evidence submitted with Defendant's Cross-Motion were not disclosed during fact discovery.  (See Doc. No. 63 at 3 n.1.)  However, upon questioning by the Court, the one thousand pages turned into thirteen pages.  (See id.)

[14]   Federal Rule of Civil Procedure 37 provide litigants with a vehicle to attack deficient discovery responses during the discovery stage and reads as follows:

(B)   A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:

(i)   a deponent fails to answer a question asked under Rule 30 or 31;

…

(iii)   a party fails to answer an interrogatory submitted under Rule 33; or

(iv)   a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B).  Rule 37 further provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

claim file that were produced.  (See Doc. No. 41 at 10.)  Defendant is under no obligation to spoon-feed its precise arguments to Plaintiffs during discovery, and the Court finds no issue with what it provided to Plaintiffs.

Accordingly, Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 41) will be denied on their first argument regarding discovery obligations.

### 2.    Defendant's Evidence in Support of its Defenses

Next, Plaintiffs contend that Defendant has not produced any facts that justify its denial of Plaintiffs' insurance claim.  (See Doc. No. 41 at 8.)  In response, Defendant avers that Plaintiffs have simply ignored the more than four thousand pages of documents that it submitted in support of its defenses.  (See Doc. No. 47 at 7.)  The Court agrees.  As Defendant—and Plaintiff—both acknowledge, Defendant produced a more than four-thousand-page claim file to support its denial of Plaintiffs' claim.  (See Doc. Nos. 41 at 11; 47 at 7.)

For this reason, Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 41) will be denied on their second argument regarding insufficient evidence.

### 3.    Evidence of Plaintiffs' Prior Fire Loss Claims

Finally, Plaintiffs argue that evidence of their prior fire losses is inadmissible because it is irrelevant and prejudicial.  (See Doc. No. 41 at 11.)  In response, Defendant submits that "any argument about the admissibility of prior fires is premature and not appropriate at the motion for summary judgment stage.  Rather, the argument should be made in a motion in limine." (Doc. No. 47 at 22) (emphasis omitted).

The prior fire loss claims, however, are relevant only on the breach of contract claim.  Since summary judgment is being denied on that claim, there is no need at this time to decide on their admissibility.  This can be done before or at trial.

Accordingly, Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 41) will be denied on their third argument regarding their prior fire loss claims.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Cross-Motion for Summary Judgment (Doc. No. 41) will be denied, and Defendant's Cross-Motion for Summary Judgment (Doc. No. 42) will be granted as to the Consumer Fraud Act and bad faith claims, and will be denied as to the breach of contract claim.  An appropriate Order follows.